# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

KAREN L. McVICKERS-DEWITT

**CRIMINAL COMPLAINT**

FILED
3-14-08
MAR 1 4 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CASE NUMBER:

08CR 217

MAGISTRATE JUDGE ASHMAN

I, R. BRIAN WENTZ, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about __February 11, 2008__ in __Grundy__ County, in the __Northern__ District of __Illinois__ defendant(s) did, (Track Statutory Language of Offense)

by force and violence, and intimidation, take from the person and presence of a bank employee at Benchmark Bank, 501 North Division Street, Verona, Illinois, approximately $7,196.50 in United States Currency belonging to and in the care, custody, control, management, and possession of Benchmark Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation,

in violation of Title __18__ United States Code, Section(s) __2113(a)__.

I further state that I am a __Special Agent with the Federal Bureau of Investigation__ and that this complaint is based
Official Title

on the following facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof:  _X_ Yes    ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

March 14, 2008                                at       Chicago, Illinois
Date                                                              City and State

Martin C. Ashman, United States Magistrate Judge          _____
Name & Title of Judicial Officer                                         Signature of Judicial Officer

STATE OF ILLINOIS     )
                      )  SS
COUNTY OF COOK        )

## AFFIDAVIT

I, R. Brian Wentz, being duly sworn, do hereby state and depose as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for more than four years. I am currently assigned to the Violent Crimes and Major Offenses Unit of the FBI's Chicago Division Field Office, South Resident Agency. My duties include the investigation of bank robberies and other violent crimes.

2. The information contained in this affidavit is based upon my personal knowledge gained through my training and experience, my participation in this investigation, and information gathered from other law enforcement officers and bank employees. The information outlined below is provided for the limited purpose of establishing probable cause in support of a criminal complaint against KAREN McVICKERS-DEWITT and does not contain all details or all facts of which I am aware relating to this investigation.

### January 23, 2008 Robbery of Benchmark Bank

3. On January 23, 2008 at approximately 10:00 a.m., Benchmark Bank, a financial institution insured by the Federal Deposit Insurance Corporation and located at 501 North Division Street, Verona, Illinois was robbed by a white male and white female. They took approximately $6,335 in United States Currency from the bank.

4. After the robbery, officers with the Grundy Count Sheriff's Office interviewed employees of the Benchmark Bank, who were present at the time of the robbery. Bank Employee A of Benchmark Bank, who was present at the time of the bank robbery, said that at approximately 10:00 a.m., Bank Employee A observed a white male (hereinafter, "Robber #1"), who was approximately

6'0" in height and weighed approximately 160 pounds, and a white woman (hereinafter, "Robber #2"), who was approximately 5'4" tall and weighed approximately 135 pounds, enter the bank. Robber #1 was wearing a dark ski mask; a hooded sweatshirt; a heavy jacket; blue jeans; a long-sleeve shirt; brown, lace-up work boots; dark gloves; and yellow-tinted glasses. Robber #1 was carrying a black, semi-automatic pistol. Robber #2 was wearing prescription glasses, a dark ski mask, jeans, a dark winter coat, and dark gloves. Robber #2 was carrying a black book bag with handles.

5. According to Bank Employee A, Robber #1 came around the teller counter, approached Bank Employee A, and said, "I'm going to make a withdrawal." Robber #2 stayed on the opposite side of the teller counter in the lobby area and handed the bag across the counter to Robber #1. Bank Employee A placed the money from Bank Employee A's drawer into the bag. Robber #1 showed Bank Employee A that he had a gun tucked into the waistband of his pants. Robber #1 then handed the bag across the counter to Robber #2. After giving the bag of money to Robber #2, Robber #1 pulled out rope and tied Bank Employee A's and Bank Employee B's hands together, saying, "You should wait to call the police because we are doing this for someone higher up. If we get caught, we will know who you are and where you live and kill you." Robber #1 and Robber #2 then left the bank. After the robbery, bank employees called 911 and provided a description of the bank robbers to the 911 operator.

### February 11, 2008 Bank Robbery

6. On February 11, 2008 at approximately 3:35 p.m., Benchmark Bank, a financial institution insured by the Federal Deposit Insurance Corporation and located at 501 North Division Street,

Verona, Illinois was robbed by a white male and white female. They took approximately $7,196.50 in United States Currency from the bank.

7. Following the robbery, law enforcement officers with the Grundy County Sheriff's Office interviewed employees of the Benchmark Bank, who were present at the time of the robbery. According to witness statements of the Benchmark Bank employees, a white male, (hereinafter, "Robber #1"), who was approximately 6'0" tall with a thin build, and a white female (hereinafter, "Robber #2"), who was approximately 5'1" tall with a medium build, entered Benchmark Bank at approximately 3:35 p.m. Robber #1 was wearing a black ski mask; a red bandana that covered the ski mask and his face; wire-rimmed, brown sunglasses; a black, cloth winter coat; black gloves; light-colored blue jeans; and brown rubber boots with a darker brown sole. Robber #1 was carrying a dark, automatic handgun. Robber #2 was wearing a gray winter coat; black gloves; a red and white, knitted scarf; and a stocking cap. Robber #2 was carrying a black, square-shaped leather purse.

8. According to witness statements, Robber #1 walked up to the locked door that separates the lobby from the teller counter. Robber #1 instructed Bank Employee C to hang up her phone and then reached over the top of the door, unlocking it. Bank Employee B, who was also present, pushed back on the door and said, "Not again." Robber #1 then pulled out a blue-steel automatic pistol, held it up in the air, and said, "I don't want to hurt anyone." Robber #1 and Robber #2 then walked behind the teller counter. Robber #2 told Bank Employee B and Bank Employee C to open their teller drawers. Seeing that there was no money in the opened drawers, Robber #2 said, "Where's the money, girls?" Robber #1 then instructed Bank Employee C to get the drive-up teller drawer. Bank Employee C pushed her silent alarm as she grabbed the drawer. Robber #2 emptied the

3

contents of the drive-up teller drawer into her purse. Robber #2 then said, "We wouldn't be doing this if we didn't have to." Robber #2 also said, "What are you worried about? It's not your money and it's FDIC insured."

9.      According to witness statements, Robber #1 then instructed Bank Employee B and Bank Employee C to lay on the ground and to put their hands behind their backs. Robber #1 attempted to tie Bank Employee B's and Bank Employee C's thumbs together with plastic zip-ties that he had brought with him but was unable to get the zip-ties to work. Robber #1 and Robber #2 then fled the bank. The bank employees pushed their alarm buttons and called 911. The bank employees described the robbers to the 911 operator.

10.     Following the robbery, law enforcement officers with the Grundy County Sheriff's Office interviewed several witnesses who were in the area at the time of the robbery. According to these witnesses, they saw a black, four-door car backed into an alley across from the bank. These witnesses also said that they saw two people walking from the same car toward the bank and that one of those people was wearing a red and white scarf that covered the person's face.

11.     The Benchmark Bank was equipped with a closed-circuit video surveillance system that captured images of the bank robbery. I reviewed photographs from the Benchmark Bank from around the time of the robbery. The photographs show two robbers: the shorter robber was wearing a red and white-striped scarf around the neck, a knit cap, and light-colored clothing; the taller robber was wearing dark clothing.

### Identification of Karen L. McVickers-Dewitt as Robber #2

12.     A description of Robber #1 and Robber #2 was published by Crimestoppers, which is a telephone hotline, separate from the emergency telephone number system, that allows a member of

the community to provide anonymous information about criminal activity. On February 25, 2008, the Grundy County Sheriff's Office ("GCSO") received a telephone tip that "Karen [McVICKER-DEWITT] and [Individual A]" are the bank robbers, and the caller provided information about where they lived. The caller also said that Karen and Individual A matched the description of Robber #1 and Robber #2 and that they drove a car that matched the description of the car seen by witnesses at the time of the bank robberies.

13. GCSO detectives examined the criminal history and Illinois Secretary of State records of McVICKERS-DEWITT and Individual A and observed that Individual A and McVICKERS-DEWITT matched the description of Robber #1 and Robber #2. The GCSO detectives also learned that a black, four-door Dodge Avenger was registered to an associate of McVICKERS-DEWITT and Individual A.

14. On March 5, 2008, McVICKERS-DEWITT was appearing at the LaSalle County Courthouse in a matter unrelated to the bank robberies. GCSO detectives approached McVICKERS-DEWITT, asking her if she would answer questions regarding the bank robberies. McVICKERS-DEWITT declined to talk about the bank robbery. When the detectives asked her to provide a DNA sample, she refused and asked for an attorney. At that point, the conversation ended.

15. GCSO detectives subsequently interviewed Witness #1, who knows McVICKERS-DEWITT. According to Witness #1, McVICKERS-DEWITT and Individual A wanted to go gambling on February 12, 2008 because they suddenly had money. GCSO detectives interviewed employees of Harrah's Casino in Joliet, Illinois, who confirmed that McVICKERS-DEWITT and Individual A had gambled at the casino from February 12, 2008 through February 13, 2008.

16.     On March 11, 2008, Witness #2 gave a hand-written statement to FBI Special Agents in Georgia. In that statement, Witness #2 said that he had recorded telephone conversations with McVICKERS-DEWITT in which she discussed her involvement in the two bank robberies at the Benchmark Bank. Witness #2 also stated that McVICKERS-DEWITT had told him that she robbed the bank with Individual A because they could not make their house payment. According to Witness #2's statement, McVICKERS-DEWITT told Witness #2 that she and Individual A had robbed the bank twice, that Individual A had carried a gun in his waistband during the first robbery, that Individual A did not have to pull the gun out, and that the gun was a BB gun. Additionally, Witness #2 said that McVICKERS-DEWITT had described the location of the bank as being about 10 miles from her house and near a scrap yard. Witness #2 said that McVICKERS-DEWITT had said that she and Individual A had received approximately $15,000 from the two bank robberies and that the money was used to pay Individual A's electrical supplier and their back rent. According to Witness #2's statement, McVICKERS-DEWITT also had said that she and Individual A had gone to a gambling boat that was about 100 miles from their house. Witness #2 also stated that McVICKERS-DEWITT had said that Individual A's boss was going to create an alibi for Individual A so that Individual A could not be tied to the first bank robbery. Witness #2 said that McVICKERS-DEWITT then tried to get Witness #2 to agree to say that she was with Witness #2 in Georgia at the time of the bank robberies.

17.     Witness #2 also gave a recording of a telephone conversation between himself and McVICKERS-DEWITT to FBI Special Agents in Georgia. On the recording, McVICKERS-DEWITT discusses robbing the Benchmark Bank with Individual A on January 23, 2008 and February 11, 2008.

18. On March 22, 2008, Individual A was arrested by the GCSD pursuant to a traffic warrant. After being advised of his *Miranda* rights orally and in writing, Individual A acknowledged his rights and signed a waiver form. During the subsequent interview, Individual A confessed to robbing the Benchmark Bank located at 501 N. Division Street, Verona, Illinois with McVICKERS-DEWITT on January 23, 2008 and February 11, 2008.

## FDIC Insured Status of TCF Bank

19. Based on a Federal Deposit Insurance Corporation ("FDIC") certificate received from Benchmark Bank on January 30, 2008 at the time of the robberies, the FDIC insured the deposits of the Benchmark Bank located at 501 N. Division Street, Verona, Illinois.

## Conclusion

20. Based on the facts set forth above, I believe there exists probable cause to believe that KAREN L. McVICKERS-DEWITT, by force, violence, and intimidation, robbed the Benchmark Bank located at 501 N. Division Street, Verona, Illinois, on or about January 23, 2008 and February 11, 2008, in violation of Title 18 United States Code, Section 2113(a).

Further Affiant sayeth not,

R. BRIAN WENTZ
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO BEFORE ME
this 14th day of March, 2008.

MARTIN C. ASHMAN
United States Magistrate Judge

7